**Billy J. JEWELL, Plaintiff,**

v.

**J. William MIDDENDORF, II, Secretary, U. S. Department of the Navy, Defendant.**

**No. 74-2621-AAH.**

United States District Court, C. D. California.

May 19, 1975.

**50**

Stanley L. Rosen, Inc., Santa Ana, Cal., by Mitchel R. Goldberg, for plaintiff, Billy J. Jewell.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Harold J. Hughes, Asst. U. S. Atty., for defendant, J. William Middendorf II, Secretary, U. S. Dept. of the Navy.

## DECISION AND ORDER

HAUK, District Judge.

Plaintiff, Billy J. Jewell, a black male hired by defendant on December 11, 1972, brings this action under the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, and under 28 U.S. C. §§ 1337 and 1343, claiming that he was discriminatorily terminated from employment on August 17, 1973, as a Boiler Plant Operator, WG–9, at the U. S. Marine Corps Air Station, El Toro, California on account of his race. On August 27, 1973, plaintiff filed a formal complaint with the Equal Employment Opportunity office (hereinafter "EEO") of race discrimination. An investigation was made, and on November 5, 1973, the EEO Investigator, Samuel D. Casey, issued his report. The report was forwarded to the Air Station Commanding Officer, and on November 30, 1973, he found that plaintiff's complaint of race discrimination was not supported by the report.

Plaintiff appealed this decision and a hearing was held by Complaints Examiner Robert D. Isom on December 29, 30 and 31, 1973, and February 1, 1974. During that hearing, a total of 17 witnesses were called, 12 by the plaintiff and 5 by the agency. The verbatim transcript has been thoroughly reviewed by the Court. On May 10, 1974, the Complaints Examiner issued his findings and recommended decision that plaintiff's race was not a factor in his termination during plaintiff's probationary period. Review at the highest agency level followed and on July 29, 1974, the Secretary of the Navy, acting through the Employee Appeals Review Board (EARB), concurred in the Complaints Examiner's findings and recommendation of no race discrimination. Plaintiff filed the action herein on September 9, 1974, and seeks reinstatement, back pay, expungement of his records, injunctive relief, damages, and attorneys fees and costs.

Plaintiff alleges that the charges that resulted from the following incidents, which were grounds for his being terminated during the one-year probationary period of his employment, were brought about because of race discrimination:

1. On March 14, 1973, plaintiff was said to have created a disturbance in the Marine Exchange lunchroom at the helicopter base. Three women employees of the lunchroom submitted letters to plaintiff's supervisor regarding his misconduct;

2. Plaintiff was issued letters of reprimand for leaving his assigned job during working hours without proper permission on May 24, 1973, and for unauthorized absence of one day on June 12, 1973;

3. Plaintiff was charged with a violation of Station Order 5510.2D on June 15, 1973, by the Marine Air Guard (MAG) 13 Security when he refused to show identification to a security guard;

4. On July 18, 1973, a Complaint Report was received from the Station Security Officer charging plaintiff with a violation of Station Order

5510.2D, "interfering with the duties of the military police."

■ The scope of judicial review of actions of administrative agencies is narrow. Traditionally, judicial review has been limited to "a determination of whether the required procedural steps have been substantially complied with." Seebach v. Cullen, 338 F.2d 663, 664 (9th Cir. 1964). *See also* Benson v. United States, 421 F.2d 515, 517 (9th Cir. 1970) citing *Seebach* with approval. The test to be applied in such cases is whether the agency's action was arbitrary, capricious or an abuse of discretion. Brancadora v. Federal National Mortgage Ass'n., 344 F.2d 933 (9th Cir. 1965); Robinson v. Blount, 472 F.2d 839 (9th Cir. 1973); Seebach v. Cullen, *supra*.

■ More recently, however, the trend has been to enlarge the judicial review test to require a judicial finding that the agency's factual determinations were and are "supported by substantial evidence." The test to be used was thus formulated by the Tenth Circuit in Vigil v. Post Office Department, 406 F.2d 921, 924 (10th Cir. 1969):

"(I) Were the procedural requirements of the statutes and regulations complied with; and (II) was the action of the department officials arbitrary or capricious or not supported by substantial evidence."

*See also* Toohey v. Nitze, 429 F.2d 1332 (9th Cir. 1970); Gray v. Macy, 358 F.2d 742 (9th Cir. 1966); Carr v. United States, 337 F.Supp. 1172 (N.D. Cal.1972).

We believe the latter cases articulating the "substantial evidence" test, as well as applying the "arbitrary or capricious" and "procedural requirements" tests, the better as well as the newer view. *See* Rubio v. Hampton, 384 F. Supp. 218 (C.D.Cal.1974).

As the Court stated in Hackley v. Johnson, 360 F.Supp. 1247, 1252–53 (D. D.C.1973):

"Discrimination is a subtle fact. It is as difficult to identify as the origin and causes of many odors. If it is present anywhere in the federal establishment, it must be promptly extinguished. Those who feel aggrieved, once having brought forward any proof suggestive of discrimination, are entitled to require those most cognizable of the relevant employment practices to come forward and disprove the accusation by the clear weight of the evidence."

*See also* Thompson v. United States Dept. of Justice, 372 F.Supp. 762 (N.D. Cal.1974).

■ Turning now to the case before the Court, the main issue is whether there is substantial evidence in the administrative record to support the agency's findings that plaintiff was not discriminated against because of his race, and that his termination was not arbitrary or capricious, i. e., that plaintiff was not treated differently than any other employee who worked for the agency, regardless of race or color.

The record does show some antagonism between plaintiff and his former supervisor, Mr. J. Carson, a caucasian, but it is clear that the record absolutely does not support plaintiff's charges that the antagonism was attributable to Carson alone or was racially motivated. In fact, Carson approved plaintiff's request for promotion on April 4, 1973, evaluated plaintiff's work performance as "weak" on April 16, 1973, and as "good" on April 24, 1973. These facts alone indicate to the Court that Carson was fulfilling his role as supervisor in honestly appraising plaintiff's work performance periodically.

Furthermore, there is no evidence to support the charge that Carson made insulting racial remarks about plaintiff to the other employees. The Complaints Examiner found that "their (sic) is no evidence Mr. Carson treated him [plaintiff] differently than the other employees."

**52**

Viewing the record as a whole, the Court feels compelled to conclude that the pleadings and the record of the administrative proceedings on file impressively demonstrate that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law. Additionally, we find that the administrative proceedings complied with applicable statutory and regulatory requirements, the factual determinations were supported by substantial evidence, and the plaintiff's discharge was not arbitrary, capricious or an abuse of discretion. The Court further finds that the clear weight of the evidence indicates that plaintiff's termination was not racially motivated, nor was he discriminated against because of race.

By reason of the foregoing decision which shall constitute the Findings of Fact and Conclusions of Law required by Rule 52, Federal Rules of Civil Procedure, it is hereby ordered that the defendant's motion for summary judgment be granted.

Let Judgment be entered accordingly.