In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2720

MICHAEL AMUNDSEN,

Plaintiff-Appellant,

v.

THE CHICAGO PARK DISTRICT, ROB O'CONNOR, KATHY
DUNLAP, MARILYN MORALES, and PETER PODGORSKI,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 2831--Harry D. Leinenweber, Judge.

Argued April 19, 2000--Decided June 30, 2000

  Before POSNER, Chief Judge, COFFEY and EASTERBROOK,
Circuit Judges.

  COFFEY, Circuit Judge.  On October 29, 1998,
Plaintiff-Appellant Michael Amundsen ("Amundsen")
filed a three count amended complaint under 18
U.S.C. sec. 1983. In the complaint, Amundsen
alleged in Count one that the Chicago Park
District's ("Park District") administrative
hearing violated due process, in Count two that
the Park District and the individually named
defendants (Rob O'Connor, Kathy Dunlap, Marilyn
Morales and Peter Podgorski) conspired to violate
his constitutional rights, and in Count three
that the Park District terminated his employment
in violation of the collective bargaining
agreement./1 On June 10, 1999, the court granted
summary judgment in favor of the Park District
and the named defendants on each of the counts
and concluded that the administrative hearing was
conducted in compliance with due process.
Furthermore, the judge found that the plaintiff
failed to allege facts constituting a conspiracy
to deny him his constitutional rights and failed
to timely seek judicial review of his discharge
under Illinois state law.

  On appeal, Amundsen argues that the district
court erred in granting summary judgment to the
defendants because his administrative hearing
violated due process. He also claims that he pled

facts sufficient to support his conspiracy claim and that federal law, rather than Illinois law, governs his claim that his discharge was in violation of the collective bargaining agreement. We AFFIRM.

I.  BACKGROUND

Amundsen was employed by the Chicago Park District as a physical fitness instructor and assigned to teach athletic skills to park patrons. As a member of the Public Service Employees Union Local 46, AFL-CIO, his employment was governed by a collective bargaining agreement. On or about March 24, 1995, the Park District's Area Manager, Rob O'Connor ("O'Connor"), informed Amundsen that a couple had accused him of striking a park patron (their child) during a class. Five days later, on March 29, 1995, Amundsen was summoned to meet with Marilyn Morales ("Morales"), the Park District Human Resources Manager, and Peter Podgorski ("Podgorski"), the Park District Supervisor of Recreation. At the meeting, Amundsen was suspended as a result of the physical abuse charge./2

After his suspension, Amundsen phoned the president of his local union and was advised that because he did not receive written notice of his suspension, "if [he] did not report for work he could be terminated from his job based upon job abandonment. . . . [and] he could return to work based upon a provision of the collective bargaining agreement."/3 When the plaintiff reported to work on April 4, 1995, he was asked to leave by Podgorski, Morales and Kathy Dunlap ("Dunlap"), the Park District's Region Manager, but he refused. The police were then called and after he refused to obey the command of the police to leave the premises, he was arrested for criminal trespass./4 Based on the physical abuse charge and this incident, the Park District terminated Amundsen on May 1, 1995. Shortly thereafter, Amundsen requested a formal discharge hearing with the Park District's Personnel Board ("Personnel Board"), which in turn appointed a hearing officer. The hearing officer conducted hearings over three days in 1997 and upheld Amundsen's termination on the ground that "[h]is defiance and refusal to stay away from the Park District while the Park District investigated the charges of physical abuse was insubordination of the highest degree," but found that the charges relating to him physically striking a child did not warrant termination. Because Amundsen failed to file exceptions to the hearing officer's rulings within the proscribed time limit, the Personnel Board adopted the hearing officer's findings and his termination became final on

December 29, 1997. For reasons unexplained, Amundsen failed to file an appeal in state court seeking judicial review of the Park District Personnel Board's final decision within the 35-day statute of limitations, as proscribed under Illinois state law, and neither Amundsen nor his union sought arbitration as permitted under the collective bargaining agreement.

Thereafter, the plaintiff filed this sec. 1983 suit in federal court, claiming that his discharge hearing violated due process, the defendants conspired to violate his constitutional rights and his employment was terminated in violation of the collective bargaining agreement. On June 10, 1999, the court granted summary judgment in favor of all the defendants, finding that: (1) the Park District's administrative hearing was in compliance with due process; (2) Amundsen failed to allege facts constituting a conspiracy to deny him his constitutional rights; and (3) he failed to timely seek judicial review of his termination under Illinois state law. The plaintiff appeals.

II. ISSUES

On appeal, Amundsen alleges that the court erred in granting summary judgment to the defendants because: (1) the administrative discharge hearing did not comply with due process; (2) the facts pled in his amended complaint were sufficient to sustain his claim that the defendants conspired to deprive him of his constitutional rights; and (3) federal law governs his claim that his termination was a violation of the collective bargaining agreement.

III. DISCUSSION

A. Count one: The Park District's Administrative Hearing Process Violated Due Process

In support of his claim that the Park District's administrative hearing process violated due process, Amundsen alleges that: (1) the hearing officer was hired and paid by the Park District and thus was biased in favor of his employer; (2) he did not have the ability to subpoena witnesses; and (3) the hearing was not conducted in accordance with formal rules of evidence. At the outset, we note that Amundsen relies on both Illinois and federal law in part to support his sec. 1983 suit. However, both Illinois and federal courts have rejected arguments similar to those raised here by Amundsen./5

1. Bias of the Hearing Officer

Amundsen initially accuses the hearing officer of being biased in favor of the Park District as "it is apparent that a hearing officer who consistently rules against the Park District will not continue to enjoy his place on the Park District payroll." Thus, he claims, "[a]s a paid agent of the [Park District] deciding a dispute over the propriety of the actions of the Defendant, the hearing officer can hardly be relied upon to be impartial in such a situation."

[But a contention of bias] must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, . . . [there is] such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

Withrow v. Larkin, 421 U.S. 35, 47 (1975); see Schweiker v. McClure, 456 U.S. 188, 196-97 (1982) (citation omitted); Scott v. Department of Commerce, 416 N.E.2d 1082, 1089 (Ill. 1981) ("Without a showing to the contrary, State administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'") (citing United States v. Morgan, 313 U.S. 409, 421 (1941)).

"This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." Schweiker, 456 U.S. at 195-96; see Gibson v. Berryhill, 411 U.S. 564, 579 (1973). To establish bias that "is too high to be constitutionally tolerable," the asserting party would need to prove that the adjudicator had "a pecuniary interest in the outcome . . . [or had] been the target of personal abuse or criticism from the party before him." Withrow, 421 U.S. at 47. "But the burden of establishing a disqualifying interest rests on the party making the assertion." Schweiker, 456 U.S. at 196.

The plaintiff has failed to present any evidence of actual bias on the part of the hearing officer. Amundsen's bald accusation is based solely on the fact that the hearing officer was employed by the Park District, which of itself is insufficient to establish actual bias. Cf. Richardson v. Perales, 402 U.S. 389, 410 (1971); Cannon v. Apfel, No. 99-1578, 2000 WL 684688, at *6 (7th Cir. May 24, 2000); Van Harken v. Chicago, 103 F.3d 1346, 1352-53 (7th Cir. 1997) (stating that even when "an administrative or adjudicative body derives a financial benefit from fines or penalties that it imposes is not in

general a violation of due process"). Thus, we hold that Amundsen has failed to satisfy his burden of overcoming the well-established "presumption of honesty and integrity in those serving as adjudicators." See Withrow, 421 U.S. at 47; see also Kloman v. Illinois Municipal Retirement Fund, 674 N.E.2d 38, 42 (Ill. App. Ct. 1996).


    2.  Inability to Subpoena Witnesses

   Amundsen's next claim is that he did not have the ability to subpoena witnesses, which he contends, also violated due process. Contrary to his assertion, the record reflects that an employee challenging his discharge may request that the Personnel Board or one of its hearing officers issue a subpoena for witnesses as provided under Illinois law. See 70 Ill. Comp. Stat. 1505/16a(c)(2). In spite of this fact, Amundsen never requested a subpoena for a witness. Nonetheless, this court has held that in the administrative hearing context, the ability to subpoena witnesses is not an absolute right. See Butera v. Apfel, 173 F.3d 1049, 1058-59 (7th Cir. 1999); see also DeLong v. Hampton, 422 F.2d 21, 24-25 (3d Cir. 1970); Henley v. United States, 379 F. Supp. 1044, 1048 (M.D. Pa. 1974). In fact, the Supreme Court came to the same conclusion in the Social Security context because of the "additional and pragmatic factor" of the sheer "cost of providing live . . . testimony" at administrative hearings. Perales, 402 U.S. at 406. Indeed, "in administrative matters, due process is satisfied when the party concerned is provided an opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute." Obasi v. Department of Prof. Reg., 639 N.E.2d 1318, 1325 (Ill. App. Ct. 1994).

   It is worthy to note that the hearing officer did in fact read him a statement of his hearing rights at the outset of the hearing, including the right to call witnesses, the right to present evidence on his behalf and the right to cross-examine witnesses testifying against him. Amundsen was represented by counsel at the hearing, testified himself and called three witnesses to testify on his behalf. The plaintiff also submitted evidence into the record, including numerous letters of support from other parents. Based on the record, we are convinced that the plaintiff had an adequate opportunity to be heard, see Obasi, 639 N.E.2d at 1325, and thus, we reject Amundsen's claim that the alleged denial of his right to subpoena witnesses violated due process.

### 3. Admission of Hearsay

Lastly, Amundsen contends that the hearing was not conducted in accordance with formal rules of evidence and that hearsay evidence was improperly considered. Contrary to his contention that the Illinois Administrative Procedure Act ("APA") mandates that the rules of evidence and privilege be followed, we hasten to point out that the APA does not apply to Park District administrative hearings. Indeed, the Illinois Supreme Court has held that "[c]learly the [Park District Personnel] Board is an administrative unit created pursuant to statute, specifically, the Chicago Park District Act (Park Act) . . . . . , [and] the APA does not apply to it because it is a unit of local government and is therefore specifically exempted from its provisions." Schmeier v. Chicago Park District, 703 N.E.2d 396, 406 (Ill. App. Ct. 1998) (emphasis added); see also 70 Ill. Comp. Stat. 1505/16a.

Because Amundsen has failed to present nor have we been able to discover any law that mandates that Park District hearings are bound by formal rules of evidence, we reject his claim that his hearing did not comport with due process. Thus, the district court's grant of summary judgment to the defendants on Count one of the amended complaint was proper.

### B. Count two: The Defendants Conspired to Deprive Amundsen of his Constitutional Rights

In relation to the plaintiff's claim that the defendants conspired to deprive him of his constitutional rights, he alleged in his amended complaint that: (1) O'Connor orally reprimanded him; (2) Morales suspended him at a meeting at which Podgorski was also present; (3) Podgorski, Morales and Dunlap caused him to be arrested for criminal trespass to land; and (4) Podgorski and O'Connor gave perjured testimony at his criminal trial.

In Kunik v. Racine County, Wisconsin, 946 F.2d 1574, 1580 (7th Cir. 1991), we held that in order to sustain a claim that the defendants conspired to deny the plaintiff his constitutional rights, "[t]here must be allegations that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations suggesting a 'meeting of the minds.'" Thus, Amundsen must satisfy the following: (1) allege the existence of an agreement; (2) if the agreement is not overt, "the alleged acts must be

sufficient to raise the inference of mutual understanding" (i.e., the acts performed by the members of a conspiracy "are unlikely to have been undertaken without an agreement"); and (3) "a whiff of the alleged conspirators' assent . . . must be apparent in the complaint." Id. at 1580-81. Indeed, a conspiracy claim cannot survive summary judgment if the allegations "are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy." Id. at 1580; see Spiegel v. Cortese, 196 F.3d 717, 726-27 (7th Cir. 2000).

The district court found that "the only [denial] Amundsen specifically identifies in his complaint" was the denial of "his right to due process, as protected by the Fourth, Fifth and Fourteenth Amendments." The court also found that the plaintiff "failed to allege any action taken by any of the individual defendants that constituted a denial of his right to due process," "made no factual allegations supporting a reasonable inference that the individual defendants agreed to any sort of conspiracy" and "fail[ed] to make any factual allegations supporting the existence of a conspiracy." We agree and similarly hold that Amundsen has failed to make any allegations that constitute a due process violation, much less any constitutional violation. It is clear that the allegations set out in his complaint and reiterated in his briefs and at oral argument fail to set forth any cognizable claim that a conspiracy existed because the allegations "are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy." Kunik, 946 F.2d at 1580. Because the plaintiff's allegations are nothing more than bald assertions without any evidentiary support, we hold that they are insufficient to establish that the defendants conspired to deprive him of his constitutional rights. The district court correctly granted summary judgment to the defendants on Count two of the amended complaint.


C. Count three: The Plaintiff's Termination Violated the Collective Bargaining Agreement

Lastly, Amundsen contends that the court erred when it dismissed his claim that he was terminated in violation of the collective bargaining agreement. He asserts that his claim is governed by federal law and therefore was not required to timely seek judicial review.

We disagree because Illinois law governs the plaintiff's claim. Under 29 U.S.C. sec. 152, the federal Labor Management Relations Act ("LMRA") does not cover Illinois employees working for a

local public entity created by the state. See 29 U.S.C. sec. 152(2) (excluding "any State or political subdivision thereof" from its definition of "employer")./6 Because the Park District is a political subdivision of the state of Illinois, state law applies and as such, "[a]ll final administrative decisions by the personnel board discharging . . . an employee with career service status are subject to judicial review under the Administrative Review Law." 70 Ill. Comp. Stat. 1505/16a(c)(4)(J) (The Park District Act). Thus, when the Personnel Board's decision to terminate Amundsen became final on December 29, 1997, Amundsen had 35 days to seek judicial review under Illinois state law. 735 Ill. Comp. Stat. 5/3-103 ("Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision . . . .")./7

The record reveals and Amundsen conceded that he failed to file an appeal within 35 days of the Personnel Board's final decision to terminate him./8 Thus, because he failed to meet the statute of limitations for seeking judicial review under Illinois law, the court correctly granted summary judgment to the defendants on Count three. See Lockett v. Chicago Police Board, 549 N.E.2d 1266, 1268 (Ill. 1990) ("The requirement that a complaint be filed within the 35-day limit is jurisdictional; if a complaint is not timely filed, no jurisdiction is conferred on the circuit court and judicial review of the administrative decision is barred.")./9

Because the plaintiff failed to establish actual bias on the part of the hearing officer, failed to demonstrate that he was unconstitutionally denied the right to subpoena witnesses, and ignored the fact that the hearing was not required to comport with formal rules of evidence, we agree with the district court's grant of summary judgment in favor of the defendants on Count one. We also conclude that the court properly granted summary judgment to the defendants on Counts two and three because Amundsen failed to sufficiently allege facts in support of his conspiracy claim and failed to file a timely appeal under Illinois law, respectively. The district court's decision is

AFFIRMED.

/1 The plaintiff's original complaint was filed on

May 8, 1998, and after the judge granted summary judgment in favor of the defendants on virtually all counts, the court granted Amundsen leave to file an amended complaint.

/2 Amundsen contends that he merely "flicked [the child] on the forehead" to get his attention. Nonetheless, the parents of the allegedly stricken child swore out a criminal complaint for battery against Amundsen. He was charged but was later acquitted.

/3 We note that the Park District hearing officer found that

[t]he advice [Amundsen] received from his union president . . . was only partially correct. While it is true that usual procedures require written notice of suspension, . . . such written notice is not mandated. . . .

There is little evidence in support of Mr. Amundsen's contention that this refusal to obey his superiors by leaving and not returning to Park District premises was based on a good-faith misunderstanding of the provisions of the Code of Conduct and on advice of his union president. Rather, it is reasonable to conclude that he refused to leave because he was obstinate, especially given his caustic responses to his superiors when they ordered him on numerous occasions to leave.

/4 Amundsen was later acquitted of the charge.

/5 Amundsen's suit does not belong in federal court in spite of the fact that his claims are meritless because his allegation that he was discharged in violation of the collective bargaining agreement is governed by Illinois law.

/6 Amundsen also mistakenly contends that the district court previously concluded that his claim falls under the Federal Labor Management Relations Act and thus, this court on appeal is bound by the court's decision. Upon review of the record, we have been unable to discover any language in the court's decision to support his assertion.

/7 We also note that Section 12.3 of Amundsen's collective bargaining agreement provides that Illinois law governs:

Suspensions of any length and discharges may be appealed to the Personnel Board of the District in accordance with the applicable provisions of the Illinois Compiled Statutes (1992) and the Illinois Revised Statutes (1991) and the

procedures of the Personnel Board and existing procedures and practices in effect on the effective date of this Agreement or as modified from time to time in accordance with Section 16.7 herein.

/8 The plaintiff does not dispute that he failed to file an appeal of his discharge in the Illinois state court system and furthermore failed to file his federal suit until May 8, 1998, more than three months after the expiration of the 35-day statute of limitations.

/9 Because Illinois state law governs the plaintiff's claim that he was terminated in violation of his collective bargaining agreement, the district court had only pendent jurisdiction over the claim. See 28 U.S.C. sec. 1367. Although "[t]he general rule is that when as here the federal claim drops out before trial (here way before trial), the federal district court should relinquish jurisdiction over the supplemental claim," Van Harken, 103 F.3d at 1354, the district judge chose not to do so. We see no reason to disturb the judge's ruling because his interpretation of state law was correct and he correctly resolved the plaintiff's suit rather than burden the state courts with the case. See id.